UNITED STATES of America, Appellee,

v.

Michael TRAVIS, also known as
Steve Johnson, also known
as Money, Appellant.

UNITED STATES of America, Appellee,

v.

Marlon TRAVIS, also known as
Mark Williams, also known
as Pookey, Appellant.

UNITED STATES of America, Appellee,

v.

Shante MILLER, also known as
Gigi, also known as Tanya
Willis, Appellant.

Nos. 92–2664, 92–2670 and 92–2774.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1993.

Decided April 29, 1993.

Douglas Peine, St. Paul, MN, argued for appellant Michael Travis.

Virginia G. Villa, Asst. Federal Public Defender, Minneapolis, MN, argued for appellant Marlon Travis.

Robert D. Sicoli, Minneapolis, MN, argued for appellant Shante Miller.

Richard G. Morgan, Asst. U.S. Atty., Minneapolis, MN, argued for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Michael Travis, Marlon Travis, and Shante Miller appeal from their convictions in the District Court[1] on an array of drug trafficking charges. Marlon Travis also appeals from his sentence. For the reasons set forth below, we affirm.[2]

### I.

In October 1991, an informant, who previously had provided information to the police that proved accurate, told a detective in the Hennepin County Sheriff's Department that a heavyset black woman known as "Gigi" was selling cocaine and provided the detective with Gigi's home phone number. The detective determined that the phone number was listed to Tanya Willis at 4016 East 55th Street in Minneapolis. The officer subsequently performed surveillance at that address and observed a white Chevrolet Monte Carlo and a blue Dodge Omni parked at the house.

In November 1991, David Spears was arrested attempting to sell cocaine to an undercover policeman. Spears agreed to cooperate with the police in return for a promise that they recommend that he receive no jail time. Spears told the police that his drug source was an individual known to him as "Money" who drove a white Monte Carlo, and Spears provided the police with Money's pager number. On November 14, 1991, the police organized a controlled drug buy. The police observed Spears dial the number he had provided for Money's pager and watched him enter his own home phone number. When Money returned the page, Spears arranged to buy half an ounce of crack for $500.00 that evening. This phone call was tape-recorded by the police.

The police searched Spears and provided him "buy money" with recorded serial numbers. Police officers conducted surveillance of Spears's meeting with Money. They observed a white Monte Carlo pull up next to Spears's parked automobile and saw a man who matched the description Spears had provided of Money get out of the Monte Carlo and into Spears's vehicle. A short time later the man left Spears's automobile and drove off. Spears then confirmed that the man he had met with was Money, gave the police officers a half-ounce of crack, and stated that he had purchased the crack from Money with the buy money. The officers followed the Monte Carlo until it returned to 4016 East 55th Street. The officers then applied for and received two search warrants: one for Money and for the Monte Carlo, and the second for 4016 East 55th Street.

On November 15, 1991, the police again directed Spears to page Money. When Money returned the call, Spears arranged to purchase four ounces of crack that evening. During a follow-up phone call, Spears and Money agreed to conduct the transaction in the parking lot of a local Burger King. Police officers searched Spears and Spears's

---

1. The Honorable Robert G. Renner, Senior United States District Judge for the District of Minnesota.

2. Case No. 92–2774 was captioned *United States v. Shante Miller* in the District Court and is so captioned in this Court. In addition, the parties consistently refer to Shante Miller by this name. For consistency, we refer to this defendant by this name, although there was evidence at trial that Shante Miller's real name is Gabriel Bowden. As our summary of the facts makes clear, Miller has used many identities.

automobile, provided Spears with buy money, and followed Spears to the Burger King. Officers conducting surveillance at 4016 East 55th Street already had observed Money exit the house at 6:49 p.m. and drive to the Burger King. Spears parked next to Money, who got out of the Monte Carlo and entered Spears's car.

When Spears gave the arrest signal, officers approached the vehicle, arrested Money, and executed the search warrant for his automobile. The officers found four ounces of crack between Money's legs and another ounce of crack in his jacket. Money was also carrying a pager; its number was the same number that Spears had stated was Money's pager number and that the police had observed Spears dial to page Money. A further search of the Monte Carlo conducted several days later led to the discovery of two loaded nine millimeter semiautomatic pistols in the car's locked glove compartment. Police officers subsequently identified Money as Michael Travis.

Meanwhile, back at 4016 East 55th Street, officers conducting surveillance had observed a woman, later identified as Shauna Bell, pull up to the house at 6:49, the exact time at which Michael Travis was leaving the house to drive to the Burger King. Bell passed Travis in the driveway and entered the house. At 6:53 Bell came out of the house and drove away. Bell returned at 7:04 and reentered the house. A few minutes later, she again left the house. Police officers stopped Bell, discovered cocaine in her handbag, and arrested her.

Bell testified at trial that a man known as "Fats" had told her that if she needed cocaine she should call the house at 4016 East 55th Street. On the evening of November 15, 1991, she called to buy a half-ounce of crack for a third party. A man who answered the phone told her that the front door was open, that the drugs would be on a table inside the door, and that she should leave the money there. Bell did as instructed and delivered the drugs to the buyer who was waiting several blocks away. The buyer expressed satisfaction and asked Bell to buy another half-ounce. Bell called the house again, spoke with the same man, and was directed to follow the same procedure as

before. This second visit to the house culminated in Bell's arrest.

Shortly after Bell's arrest, police executed the search warrant for 4016 East 55th Street. Apart from Bell, no one had entered or left the house since Michael Travis departed for the Burger King. As the officers entered the house they observed Marlon "Pookey" Travis running towards the back of the house. One officer testified that Travis appeared to throw an object into the southeast bedroom. The officers apprehended Travis near the back door. Travis, the only person in the house at the time of the search, told the police that his bedroom was the southwest bedroom and that Shante Miller lived in the basement bedroom. Travis also told the officers that Michael Travis lived in the house. Finally, Travis told officers that Miller drove a Dodge Omni and identified pictures of her.

In searching the house, the officers found two safes, one of which contained roughly a pound and a half of cocaine and nearly five thousand dollars and the other of which contained over twelve thousand dollars. Included in the twelve thousand dollars was $480.00 of the $500.00 of buy money used by Spears the previous day. The police officers also found drug paraphernalia throughout the house and found drug notes and a drug ledger containing entries for Fats, G., Money, and Pookey in the kitchen. The officers found a loaded nine millimeter semiautomatic pistol in a pile of laundry in the southeast bedroom.

The officers also found two boxes of nine millimeter bullets: one, found between the box spring and the mattress in the southeast bedroom, contained Federal brand bullets; the other, found by the front door of the house, contained Winchester brand bullets. All the guns found in this case were loaded with Federal brand bullets of the type found in the southeast bedroom; one of the two guns found in the Monte Carlo's glove compartment also contained Winchester brand bullets of the type found by the door of the house. Finally, in the basement bedroom, officers found documents with the names Tanya Willis and Shante Miller, and found a

**1320**

large number of blank and partially completed birth certificates.

After executing the search warrant, surveillance officers waited to see if Shante Miller would return to the house. At about 10:00 p.m. Miller drove up to the house in her Dodge Omni. The officers approached Miller, who identified herself to them as Tanya Willis and said that she was also known as Gigi. The officers recognized these names and arrested her. They searched Miller and discovered that she was carrying a loaded nine millimeter semiautomatic pistol, two ounces of cocaine, and approximately $11,000.00.

### IIA.

■ Michael Travis argues that the police omitted crucial facts in their application for the warrant to search him and his vehicle and that evidence obtained as a result of the warrant's execution should have been suppressed. When a defendant establishes that a police officer applying for a search warrant has recklessly or intentionally omitted facts with the intent to make his affidavit misleading, and that the affidavit, if supplemented by the omitted material, is insufficient to establish probable cause, the resulting search warrant must be voided. *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986); *see also Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2677, 57 L.Ed.2d 667 (1978).

■ Travis bases his argument on two omissions: first, the affidavit did not state that the November 14, 1991 drug buy occurred in Spears's automobile, that this automobile had not been searched by the police, and that none of the officers conducting surveillance actually saw the drugs and money change hands; second, the affidavit did not state that Spears recently had been arrested for selling cocaine to an undercover police officer and that the police had promised Spears leniency if he cooperated with their investigation. Travis argues that omission of these facts was intentional and that it was necessary to the finding of probable cause since these facts demonstrate that Spears had both the incentive and the opportunity to frame him. We disagree.

The search warrant application, supplemented by the omitted material, clearly would have been sufficient to support a finding of probable cause. As set forth in the affidavit, the November 14, 1991 drug buy was arranged during a telephone conversation between Spears and Travis during which Spears informed Travis that he wished to purchase a quantity of crack; this conversation took place while Spears was under the control of the police. (Although the affidavit does not expand on this statement, the evidence at trial showed that the officers observed Spears dial Travis's pager number, and that the officers tape-recorded the subsequent conversation between the men.) That this telephone conversation regarding the drug transaction took place prior to the meeting in Spears's automobile makes it very unlikely that Spears framed Travis by providing the officers with cocaine previously hidden in his automobile and falsely claiming that Travis had sold it to him.

The touchstone in determining probable cause is probability rather than certainty, *Reivich*, 793 F.2d at 963, and the affidavit, as it would read if supplemented by the facts to which Travis points, still would have demonstrated a strong probability that contraband would be found in the Monte Carlo or on the person of Travis. Because we find that the supplemented affidavit would have supported a finding of probable cause, we need not address the question of whether the omission was intentional. The District Court correctly upheld the validity of the search warrant for Michael Travis's automobile and for his person.

### B.

Michael Travis was convicted, among other things, of two counts of using a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Supp. III 1991) based on the two guns found in the glove compartment of the Monte Carlo, and of one count of aiding and abetting Marlon Travis in the use of a firearm during a drug trafficking crime in violation of 18 U.S.C. §§ 2 (1988) and 924(c)(1) (Supp. III 1991) based on the gun found in the southeast bedroom at 4016 East 55th Street. Travis challenges the sufficiency of the evidence to support these convictions. We will reverse the convictions only if

no reasonable jury could have found him guilty beyond a reasonable doubt. *See United States v. Young–Bey,* 893 F.2d 178, 181 (8th Cir.1990).

Section 924(c)(1) provides that "[w]hoever, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime, be sentenced to imprisonment for five years." 18 U.S.C. § 924(c)(1). We have held that the government need not show that a defendant was in actual physical possession of a firearm; rather, it is enough that a defendant kept a firearm readily accessible to protect and facilitate a drug enterprise. *Young–Bey,* 893 F.2d at 181; *see also United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985) (noting that firearms are often used by drug dealers for protection and intimidation and stating: "The presence and availability in light of the evident need demonstrates the use of the firearm to commit the felony.").

■ Travis argues that a reasonable jury could not have found that he used the two firearms in the glove compartment of the Monte Carlo in relation to his drug trafficking activities because the vehicle was registered to a resident of Louisiana, the glove compartment was locked, and no key that opened the glove compartment was found on Travis's person. Police officers, however, testified that Travis regularly drove the Monte Carlo, that the glove compartment was easily popped open using a screwdriver they found on the floor on the passenger side of the vehicle, and that the guns were loaded with bullets that matched the two boxes of bullets found at 4016 East 55th Street. Moreover, testimony from police officers indicated that drug dealers frequently drive vehicles registered to other people and keep drugs and cash in locked glove compartments or trunks to help disassociate themselves from such contraband if they are caught by the police. Based on this evidence, the jury could have concluded beyond a reasonable doubt that Travis had access to the firearms in the Monte Carlo's glove compartment and that he used them during and in relation to his drug trafficking crimes.

■ Travis also argues that the evidence was insufficient to sustain his conviction for aiding and abetting the use during a drug trafficking crime of the gun found in the southeast bedroom of 4016 East 55th Street. Police officers testified at the trial that drug houses are rarely left empty; rather, someone is almost always there to guard the drugs and cash in the house and this person is almost always armed with a gun. The evidence presented at trial supported a conclusion that on the evening of November 15, 1991, Marlon Travis stayed home to guard the house. Moreover, the evidence showed that Michael Travis lived in this house, and by process of elimination, that the southeast bedroom was his bedroom. The bullets with which the gun was loaded matched those in a box of ammunition found between the box spring and the mattress in Michael Travis's bedroom. Based on this evidence, a reasonable jury could find that Michael Travis aided and abetted Marlon Travis in the use of a firearm during a drug trafficking crime.

We conclude there was sufficient evidence to support each of the firearms convictions that Michael Travis challenges.

### IIIA.

■ Like his brother, Marlon Travis, who also was convicted of several drug trafficking charges, challenges the sufficiency of the evidence to support his conviction for aiding and abetting the use during a drug trafficking crime of the gun found in the southeast bedroom. We apply the same legal standards set forth in our discussion above and quickly dispose of Travis's claim.

Police officers testified at trial that drug houses almost never are left unguarded and that there almost always will be at least one member of the conspiracy, armed with a gun, in the house. The government proved at trial that Marlon Travis participated in the conspiracy to distribute cocaine. The officers who executed the search warrant at 4016 East 55th Street testified that Travis was the only person home when they executed their warrant. In addition, one of the first officers to enter the house testified that he observed Travis toss an object into the southeast bedroom as Travis ran towards the back of the house. The only suspicious object discovered by the police that Travis

could have tossed into the southeast bedroom was the nine millimeter semiautomatic pistol found in the pile of laundry in that room.

The government's evidence clearly supports a conclusion that, by taking a turn standing guard at the house, Travis actively assisted Michael Travis (and his other coconspirators) in using a firearm during and in relation to the conspiracy to distribute cocaine. Therefore, a reasonable jury could have concluded that Travis aided and abetted the use of a firearm during a drug trafficking crime, and Travis's challenge to the sufficiency of the evidence fails.

### B.

■■■■ Marlon Travis also argues that the prosecutor's improper and prejudicial remarks during her opening and closing statements deprived him of a fair trial and that he therefore is entitled to a new trial. The grant or denial of a mistrial may be reversed only upon a showing of abuse of discretion. *United States v. Figueroa,* 900 F.2d 1211, 1215 (8th Cir.), *cert. denied,* 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 675 (1990). We conduct a two-part inquiry concerning alleged prosecutorial misconduct: first, we determine whether the prosecutor's remarks were improper; then, if the remarks were improper, we consider whether they prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. *Id.* In assessing the prejudicial impact of prosecutorial misconduct, we consider: "1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence; and 3) the curative actions taken by the trial court." *United States v. Andrade,* 788 F.2d 521, 530–31 (8th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986).

■■■■ The only allegedly improper remark to which Travis made a contemporaneous objection was the prosecutor's statement during the rebuttal portion of her closing argument that there was no evidence that Shante Miller's keys opened the safes found in the house. In fact, the evidence was that one of Miller's keys, while not designed to open the safes, could be used to jimmy open one of the safes. The prosecutor's remark therefore was improper. Since Travis has identified an improper remark, we apply *Andrade*'s three-part test to determine whether

the remark prejudiced his substantial rights so as to deprive him of a fair trial.

■■■■ Applying this test, the cumulative effect of the misconduct was minimal: the prosecutor's statement that none of Miller's keys opened the safes had only limited prejudicial impact, since Travis's attorney had reminded the jury in his closing argument that Miller had a key that could be used to open a safe, and since the fact that Miller was able to jimmy open one safe was of limited probative value in determining Travis's guilt. Second, the government's evidence created a strong case against Travis. Drug notes, including a drug ledger, discovered in the kitchen at 4016 East 55th Street contained entries under Travis's street name, Pookey; furthermore, as the only person home when Shauna Bell called to obtain the second of the two half-ounces of crack she bought on November 15, 1991, Travis must have been the person who took her phone call and who set the drugs by the front door for her. Third, when Travis objected to the prosecutor's improper remark, the trial judge instructed the jury to remember the evidence. This approach would not cure all improper arguments, *see Newlon v. Armontrout,* 885 F.2d 1328, 1337 (8th Cir.1989), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990), but it is adequate in a situation such as that in this case in which the fact at issue (that one of Miller's keys could be used to jimmy open one of the two safes) was of limited probative value and in which the totality of the evidence pointed strongly towards Travis's guilt.

Therefore the only improper remark by the prosecutor to which Travis made a contemporaneous objection did not prejudice Travis's substantial rights so as to deprive him of a fair trial. The District Court did not abuse its discretion in refusing to grant Travis a mistrial.

■■■■ Travis also challenges two remarks made by the prosecutor to which he made no contemporaneous objection at trial. Because Travis made no contemporaneous objection, we review his claims under the plain error standard and reverse only if the error is so prejudicial as to cause a miscarriage of justice. *See Thomure v. Truck Ins. Exch.,* 781

F.2d 141, 143 (8th Cir.1986). First, the prosecutor stated that when police officers entered 4016 East 55th Street they observed Travis running from the area of the southeast bedroom. Two of the first officers to enter the house testified to precisely this effect. Thus this remark was not even improper.

■ Second, Travis argues that he was prejudiced when the prosecutor, in her opening statement, twice referred to the gun found in the southeast bedroom of the houses as a "semi-automatic machine gun type gun," Transcript at 15, 26. The government concedes that the gun at issue was not a machine gun, *see* 26 U.S.C. § 5845(b) (1988) (defining a machine gun as a gun that can fire more than one bullet when the trigger is squeezed and held). However, the prejudicial impact of the prosecutor's statements was limited since the prosecutor also used the word "semi-automatic" each time she described the gun, and the strength of the government's case against Travis precludes us from finding a miscarriage of justice. The trial court did not commit plain error in allowing the remarks.

### C.

■ Finally, Marlon Travis appeals from his sentence. The trial judge sentenced Travis to concurrent terms of 151 months on the charges of conspiring to distribute cocaine in violation of 21 U.S.C. § 846 (1988) and of maintaining a residence for the purpose of distributing cocaine in violation of 21 U.S.C. § 856(a)(1) (1988).[3] Travis argues that the trial judge erred in including the entire quantity of cocaine recovered from all of the individuals arrested in connection with this case as relevant conduct for the purpose of sentencing him on these counts. Because Travis did not make this argument in the trial court, he has waived it unless he can demonstrate plain error resulting in a miscarriage of justice. *United States v. Flores,* 959 F.2d 83, 88 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992).

Under the sentencing guidelines, a criminal defendant's relevant conduct includes "all acts ... committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction ... or that otherwise were in furtherance of that offense." United States Sentencing Commission, *Guidelines Manual,* § 1B1.3(a)(1) (Nov.1991). When a defendant participates with others in criminal activity, "whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' ... includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." *Id.* comment. (n. 1).

The jury found that Travis was a member of a conspiracy to distribute cocaine. The evidence supports a conclusion that the quantities of cocaine whose attribution to him Travis challenges reflected conduct of other conspirators in furtherance of the conspiracy that was reasonably foreseeable by Travis. We therefore are satisfied that the District Court did not commit plain error in its finding concerning the quantity of cocaine attributable to Travis for sentencing purposes.

### IVA.

■ Shante Miller argues that the police did not have probable cause to arrest her when she returned to 4016 East 55th Street at 10:00 p.m. on November 15, 1991, and therefore that the evidence found on her at the time of her arrest and the statement she provided to the police shortly afterwards should have been suppressed. We disagree.

■ Police officers may make warrantless arrests when they have probable cause to believe a person has committed a felony. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Probable cause exists when officers possess information that would "warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13

---

3. The judge also sentenced Travis to a term of sixty months, to run consecutively to the two terms of 151 months, for aiding and abetting the use of a firearm during a drug trafficking crime in violation of 18 U.S.C. §§ 2, 924(c)(1).

L.Ed.2d 142 (1964). We review the District Court's finding of probable cause for clear error. *See United States v. Harris*, 956 F.2d 177, 180 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 85, 121 L.Ed.2d 48 (1992).

The police had the following information at the time they arrested Miller. They had received information from a reliable informant that a heavyset black female approximately twenty-seven years old named Gigi was selling cocaine, and had determined that the phone number the informant had provided for Gigi was listed to Tanya Willis at 4016 East 5th Street. The police had searched the house and had discovered evidence of a relatively large-scale cocaine distribution operation. Marlon Travis had told the police that Shante Miller lived in the basement bedroom and that she drove a Dodge Omni, and the officers had discovered documents in the basement with both the names Tanya Willis and Shante Miller on them and had obtained a license plate number for a Dodge Omni registered to Shante Miller. Finally, Miller returned to the house in a Dodge Omni bearing this license plate number, she matched the physical description provided by the reliable informant, and she told police officers that her name was Tanya Willis and that she also went by the name Gigi, the name provided by the informant.

Contrary to Miller's protestations, this is not a case in which the police had no basis to arrest Miller other than her association with suspected criminals. *See United States v. Everroad*, 704 F.2d 403, 406 (8th Cir.1983) (holding that mere association with suspected criminals and proximity to a crime do not create probable cause). The tip from a reliable informant that Miller was selling cocaine, her use of false identities, and her residence in the drug house clearly would warrant a prudent person in believing that Miller was involved in distributing cocaine. Therefore the District Court's finding that the police had probable cause to arrest Miller is not clearly erroneous and that court did not err in refusing to suppress the evidence that flowed from the arrest.

### B.

 Miller also challenges her conviction for conspiring to distribute controlled substances in violation of 21 U.S.C. § 846 (1988).

The indictment charged Miller with conspiring to distribute "in excess of 500 grams of cocaine and in excess of 50 grams of cocaine base or 'crack' cocaine." The trial court instructed the jury that it could find Miller guilty of the conspiracy charge if it found either that she had conspired to distribute cocaine *or* that she had conspired to distribute crack. Miller argues that this instruction impermissibly broadened the indictment under which she was charged by allowing her to be convicted for conspiring to distribute either of two drugs even though the grand jury's indictment charged her with conspiring to distribute both cocaine and crack. We disagree.

This case differs from cases such as *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), that hold that conviction for an offense not fully contained in an indictment constitutes an impermissible broadening of the indictment. In the case *sub judice*, the elements of the offense of which Miller was convicted are fully set forth in the indictment; the issue is whether conviction upon proof of a conspiracy to distribute only one of the two drugs charged in the conjunctive broadens the indictment.

In *United States v. McGinnis*, 783 F.2d 755, 757 (8th Cir.1986), McGinnis was indicted for receiving and concealing stolen truck parts in violation of 18 U.S.C. § 2315. The trial judge instructed the jury that it could find McGinnis guilty if it found that he had received or concealed stolen truck parts. We affirmed McGinnis's conviction, holding that "[p]roof of any one of the violations charged conjunctively in the indictment will sustain a conviction." *Id.*

Our holding in *McGinnis* controls our decision in this case. We therefore hold that the trial court did not err in instructing the jury that it could convict Miller if it found that she conspired to distribute either cocaine or crack.

### V.

For the reasons set forth above, Michael Travis's, Marlon Travis's, and Shante Miller's

convictions and Marlon Travis's sentence are affirmed.