may arguably have compelled Lucas to relinquish his constitutional right to trial by jury.

The majority contends that because all parties knew the maximum quantity of drugs that could be attributed to Lucas fell under §841(b)(1)(A), the district court properly stated the potential penalty that Lucas faced when he entered his guilty plea.

However, even conceding that Lucas was aware of the possibility of sentencing pursuant to §841(b)(1)(A), the district court wholly failed to instruct Lucas as to the range of applicable penalties. As such, in substance and scope, the district court's instruction as to sentencing was clearly erroneous.

Accordingly, as the district court's erroneous instruction prevented Lucas from knowingly and voluntarily waiving his constitutional rights, I would reverse Lucas's conviction.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0075P (6th Cir.)
File Name: 02a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　*Plaintiff-Appellee,*

　　　*v.*                                    No. 99-6718

MARCUS LAVALE LUCAS,
　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00050—Charles R. Simpson III,
District Judge.

Argued: July 12, 2001

Decided and Filed: February 28, 2002

Before: SILER and GILMAN, Circuit Judges; DONALD,
District Judge.*

———————————

**COUNSEL**

**ARGUED:** Patrick J. Bouldin, ASSISTANT FEDERAL PUBLIC DEFENDER, Louisville, Kentucky, for Appellant. C. Dean Furman, Jr., ASSISTANT UNITED STATES

---

* The Honorable Bernice B. Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

ATTORNEY, Louisville, Kentucky, for Appellee.
**ON BRIEF:** Patrick J. Bouldin, ASSISTANT FEDERAL PUBLIC DEFENDER, Louisville, Kentucky, for Appellant. Mark L. Miller, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

GILMAN, J., delivered the opinion of the court. SILER, J. (pp. 17-18), and DONALD, D. J. (pp. 19-20), delivered separate opinions concurring in part and dissenting in part.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. Marcus Lavale Lucas pled guilty to attempting to distribute cocaine base (crack cocaine) and conspiring to commit that offense, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 2. The district court sentenced Lucas to 210 months in prison and a five-year term of supervised release. Lucas now appeals, arguing that (1) his guilty plea was involuntarily and unknowingly made, (2) his sentence is in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), (3) the district court erred in calculating the quantity of drugs attributable to him, and (4) the district court erred in enhancing his sentence for possession of a firearm in connection with a drug trafficking offense. For the reasons set forth below, we **AFFIRM** the district court's judgment of conviction, but **REVERSE** and **REMAND** the case for resentencing consistent with this opinion.

### I. BACKGROUND

#### A. Factual background

On March 30, 1999, Lucas had a telephone conversation with his friend Brian Horton, who was planning to drive from Chicago, Illinois to Lucas's home in Louisville, Kentucky. Lucas asked Horton if he would bring Lucas a package, telling Horton when and where the package would be

---

## CONCURRING IN PART, DISSENTING IN PART

---

DONALD, District Judge. I agree with the majority's decision regarding the district court's error in finding that Lucas constructively possessed the firearm. With respect to the district court's compliance with F. R. Crim. P. 11 (Rule 11), however, I respectfully dissent.

Before accepting Lucas's plea to the charges in the indictment, the district court was required by Rule 11 to determine that Lucas understood any applicable minimum and maximum penalties provided by law. As Lucas's indictment charged drug possession under §841(a)(1), but failed to specify drug quantity, the only penalty available to the court at the plea hearing was provided by §841(b)(1)(C), which carried no minimum and a 20-year maximum sentence. Consequently, in instructing Lucas that he faced a 10-year minimum and a maximum life sentence under §841(b)(1)(A), the district court deprived Lucas of the opportunity to make a knowing and informed plea. More specifically, the district court misled Lucas with its material statement that he could face a sentence up to and including life in prison. The district court, therefore, committed clear error.

Because the district court placed Lucas in the position of having to make a plea without all of the material information, I find that voluntariness was negated. The majority reasons that because he did not receive a sentence in excess of the 20 year maximum the court's error is harmless. From a purely academic perspective, that may the case. However, in the real life situation of a defendant who reasonably believes that he risks facing the possible loss of liberty forever, the choices he makes will hardly be academic. Thus, Lucas may have reasonably made vastly different decisions had he been informed that the risks were capped at a time certain, i.e. 20 years, as opposed to life. Indeed, the erroneous instruction

§ 924(c) for using and carrying a firearm during a drug trafficking offense. One defendant, Willie Critton, asserted that his conviction under § 924(c) should be reversed for insufficiency of evidence. Although Critton was the driver of the van in which he and two others were driving, it was not registered to him. Moreover, he was charged with the use and carrying of a .22 caliber handgun found in a suitcase located in the passenger compartment of the van, although no evidence directly linked the handgun to him. Our court affirmed the conviction under the "fortress" theory from *United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989). Thus, this court primarily discussed the possession of the firearm "during and in relation to" drug trafficking crimes, as required under the statute. It had no problem finding that Critton jointly possessed the .22 caliber handgun with Leslie Livingston, who owned the .22 caliber handgun. *See also United States v. Travis*, 993 F.2d 1316, 1321 (8th Cir. 1993) (conviction under 18 U.S.C. § 924 upheld for firearms found in a locked glove compartment without proof that the defendant had keys to the glove compartment or owned the vehicle or the firearms).

Therefore, I would affirm the decision of the district court entirely.

delivered. Horton agreed. At the meeting place in Chicago, an allegedly unknown person gave Horton some papers, which he had expected to receive, and a blue plastic bag, which Horton agreed to take to Lucas in exchange for $500. Horton placed the papers in the car's passenger seat and concealed the plastic bag in the lining of the trunk's interior.

While driving to Louisville, Horton was stopped for speeding by an Indiana state trooper. Horton consented to a search of his car. The trooper discovered the plastic bag, which contained 595.8 grams of crack cocaine divided into five smaller bags, in the trunk's lining.

In exchange for a reduction in his potential sentence, Horton agreed to cooperate with the authorities. Agents from the Drug Enforcement Administration and the Indiana state police placed a substitute package consisting of 54.2 grams of crack cocaine and soap shavings on top of the spare tire in Horton's trunk. When Horton arrived in Louisville, he drove his car to a shopping center parking lot, where one of its tires was flattened. Horton then called Lucas and told him that he needed a jack to change the tire. Lucas agreed to assist him.

Lucas and his codefendant, David Baker, went to the parking lot to meet Horton. The three men discussed the flat tire, and then proceeded to the rear of the vehicle, where the trunk was already open. Once Lucas and Baker reached the trunk, the police arrested them. Neither man had taken possession of the drugs prior to their arrest, but Lucas had untucked his shirt so that, according to the government, he would be able to conceal the drugs when he removed them from the trunk.

After the arrest, the police found a loaded .38-caliber firearm in the glove compartment of the car that Lucas had driven. The police also searched Lucas's apartment pursuant to a properly authorized search warrant. They found digital scales, six hundred plastic baggies with their corners cut out, and $1,870 in cash.

## B.   Procedural background

Lucas pled guilty on July 19, 1999.  At his guilty plea hearing, the district court informed Lucas that he faced a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment for the counts to which he was pleading guilty.  Lucas's indictment, however, did not state the quantity of drugs allegedly attributable to him.  In his guilty plea colloquy, moreover, Lucas disputed the quantity of crack cocaine for which the government sought to hold him accountable.   He argued that he should not be held responsible for either 595.8 grams, the amount that was originally placed in the plastic bags, or 54.2 grams, the amount that was actually in the trunk of Horton's car when Lucas was arrested.   Instead, he claimed that he was responsible for only one ounce of crack cocaine, the amount that he allegedly intended to purchase with the $1,870 that was found in his apartment.

The Presentence Investigation Report (PSR) recommended that Lucas be held accountable for the entire 595.8 grams of crack cocaine, giving him a base offense level of 36 for purposes of the United States Sentencing Guidelines.  In addition, the PSR added a two-level sentencing enhancement under § 2D1.1(b) of the United States Sentencing Guidelines for possessing a firearm during a drug trafficking offense, resulting in an adjusted offense level of 38.  Lucas then received a three-level downward adjustment under § 3E1.1 of the United States Sentencing Guidelines for acceptance of responsibility. The PSR combined this adjusted offense level of 35 with Lucas's criminal history category of III, and recommended a sentence of imprisonment within the guidelines range of 210-262 months, followed by a period of supervised release of at least five years.

On December 10, 1999, the district court conducted a sentencing hearing.  Lucas objected to the quantity of drugs for which the PSR held him accountable and to the firearms enhancement. With regard to the quantity of drugs, the government presented the evidence discovered in the search

---

### CONCURRING IN PART, DISSENTING IN PART

---

SILER, Circuit Judge, concurring in part and dissenting in part. I concur in all aspects of the majority opinion except for the reversal of the firearm enhancement under Part II.  D.

As the majority correctly states, in order to enhance a sentence for the possession of a firearm during a drug trafficking offense under USSG § 2D1.1(b)(1), the prosecution must prove by a preponderance of the evidence that the defendant actually or constructively possessed the weapon during the commission of the offense. *See United States v. Bender*, 265 F.3d 464, 474 (6th Cir. 2001). I think that there is ample evidence from which the court could infer that defendant Lucas possessed the handgun found in the glove compartment of the car during the commission of the drug offense.  Lucas does not contest the fact that the firearm was in the car during the time that the drug sale was effected. He only contests the fact that there was any proof that he possessed the firearm found in the glove compartment.

As the majority again correctly states from *United States v. Hayes*, Nos.  88-5735 to 88-5738, 88-5891 to 88-5894, 1989 WL 105937, at *3 (6th Cir.  Sept.  14, 1989) (unpublished table decision), this court has found that a defendant could be convicted for possession of a firearm when he was the driver and only occupant of the vehicle and the prosecution had not presented evidence that the defendant either owned the gun or the car.  In the case before us, Lucas and codefendant David Baker were in the vehicle together.  Possession not only may be constructive, but a defendant need not have exclusive possession of property to be found in possession of it.  Joint possession will suffice. *See United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.  1973).

In *United States v. Critton*, 43 F.3d 1089, 1096-97 (6th Cir. 1995), this court upheld a conviction under 18  U.S.C.

glove compartment was easily popped open using a screwdriver they found on the floor of the passenger side of the vehicle, and that the guns were loaded with bullets that matched the two boxes of bullets found at 4016 East 55th Street [a house at which the defendant lived].").    We therefore find each of these cases distinguishable.

Given the complete lack of evidence that Lucas actually or constructively possessed the firearm that was in the car's glove compartment, we conclude that the district court's finding to the contrary was clearly erroneous. *See United States v. Gregory*, Nos. 91-6400, 91-6431, 1992 WL 393144, at *12 (6th Cir. Dec. 22, 1992) (unpublished table decision) (holding that the district court erred in applying the firearm enhancement where the government presented no evidence that the defendant possessed the gun or knew that the gun was located in the bottom of his codefendant's backpack). Because the government presented no evidence regarding ownership of the car or the gun and did not lift any fingerprints from the gun, and because Lucas was not the sole occupant of the car, the gun could just as easily have been "possessed" by the codefendant Baker as by Lucas, to say nothing of the possibility that it was not possessed by either of them.    The district court therefore erred in applying the two-level enhancement under § 2D1.1(b)(1) to Lucas.

### III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's judgment of conviction, but **REVERSE** and **REMAND** the case for resentencing consistent with this opinion.

of Lucas's apartment.  In addition, the police testified that plastic baggy corners are often used to sell drugs such as crack cocaine and marijuana.  The police acknowledged that $1,870 would buy only one to one-and-one-half ounces of crack cocaine at the going rate, but the government presented testimony that drug dealers often work on consignment.  With regard to the firearm enhancement, no evidence was presented concerning the ownership of the gun or the vehicle, and no fingerprints had been lifted from the gun.

After hearing evidence regarding the quantity of drugs involved in this case, the district court concluded that Lucas was responsible for the 595.8 grams of crack cocaine that were originally placed in the trunk of Horton's car.  It proceeded to overrule both of Lucas's objections to the PSR. The district court then sentenced Lucas to 210 months in prison and a five-year term of supervised release. This appeal followed.

### II.    ANALYSIS

#### A.    Validity of Lucas's guilty plea

Lucas's first argument on appeal is that his guilty plea was not valid because the district court provided erroneous information regarding his potential sentence at the guilty plea hearing.  According to Lucas, the district court violated Rule 11(c)(1) of the Federal Rules of Criminal Procedure, which requires the judge to "inform the defendant of . . . the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . . ." Fed. R. Crim. P. 11(c)(1).

A guilty plea is valid only "if it is entered intelligently and voluntarily." *United States v. Layne*, 192 F.3d 556, 577 (6th Cir. 1999) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)).  Rule 11 "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969).  Because Rule 11 includes a harmless error provision, however, a violation of

Rule 11 does not require that the plea be vacated and the defendant be given an opportunity for a new plea or a trial unless the error affects the defendant's substantial rights. Fed. R. Crim. P. 11(h) (providing that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded"); *United States v. Syal*, 963 F.2d 900, 904 (6th Cir. 1992) (noting that violations of Rule 11 are subject to a harmless error analysis).

At Lucas's guilty plea hearing, the district court informed him that the mandatory minimum sentence for the offenses to which he was pleading guilty was ten years, and that he faced a maximum penalty of life imprisonment. Lucas contends that this statement was erroneous, and therefore violated Rule 11. To support his argument, Lucas relies on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), where the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490.

This court has applied *Apprendi*'s holding to 21 U.S.C. § 841(b)(1), which determines the maximum and minimum penalties based on the quantity of drugs for which a defendant is accountable. *United States v. Ramirez*, 242 F.3d 348, 351-52 (6th Cir. 2001) (holding that § 841(b)(1)'s prescribed mandatory minimum penalties, which are based in part upon the quantity of drugs, implicate *Apprendi*); *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000) (vacating the defendant's sentence because the quantity of drugs that resulted in a higher maximum penalty was not submitted to a jury and proved beyond a reasonable doubt).

Lucas's argument fails, however, because the district court's statement regarding the mandatory minimum and the maximum sentences for the offenses to which Lucas was pleading guilty was not erroneous at the time it was made. When Lucas pled guilty, this court's decisions required the district court rather than the jury to determine the quantity of

placed it in his car "about a week before his arrest, intending to take it to a gunsmith for repair." *Id*. at 881.

Nor do we find the cases relied upon by the dissent on this issue persuasive. The possibility of a defendant being held accountable for a firearm due to joint possession is not relevant in the absence of evidence that either Baker or Lucas had knowledge that the firearm was in the glove compartment. *Cf. United States v. Craven*, 478 F.2d 1329, 1333-34 (6th Cir. 1973) (concluding that the evidence supported Craven's conviction for unlawful possession of firearms where Craven not only had constructive possession of the house in which the firearms were found, but also admitted that he collected guns, and where physical evidence and testimony connected Craven to the room in which the firearms were found). In fact, *Craven* recognized that "[a]lthough possession of the residence is insufficient to establish possession of all the contents of the house, the government's evidence went much further." *Id*. at 1333.

The firearms that led to the convictions in *United States v. Critton*, 43 F.3d 1089 (6th Cir. 1995), moreover, were found not only in a suitcase located in the passenger compartment of the van, but also in a McDonald's restaurant bag located on the floor of the front seat of the van that Critton was driving. *Id*. at 1092-93, 1096. As a result, the question of whether Critton knew about the presence of the guns was not an issue that merited the court's discussion. *Id*. at 1096-97 (focusing on whether Critton possessed the guns "during and in relation to" a drug trafficking offense rather than on whether Critton knew that the guns existed or if he could be linked to the guns).

Finally, although the firearms in *United States v. Travis*, 993 F.2d 1316 (8th Cir. 1993), were found in the locked glove compartment of a car not registered to the defendant, and the defendant did not possess a key to the glove compartment, additional evidence supported the defendant's conviction under § 924(c)(1). *Id.* at 1321 ("Police officers, however, testified that Travis regularly drove the Monte Carlo, that the

2000).    If the government satisfies this burden, "a presumption arises that such possession was connected to the offense," and the burden "shifts to the defendant to show that it is clearly improbable that the weapon was connected to the offense." *Bender*, 265 F.3d at 474 (internal quotation marks and citations omitted). As with other factual determinations made at a sentencing hearing, we will uphold the district court's finding that Lucas possessed a firearm during the commission of his drug trafficking offense unless it is clearly erroneous. *Id*.

The government presented no evidence at the sentencing hearing that Lucas owned the gun, owned the car that he was driving, or even knew that the gun was in the car's glove compartment. Nor was the gun used, displayed, or otherwise involved in the meeting between Lucas and Horton. Furthermore, the authorities did not lift fingerprints from the gun to determine whether Lucas had ever handled the weapon. Finally, Lucas was not the sole occupant of the car. *Cf. United States v. Hayes*, Nos. 88-5735 to 88-5738 & 88-5891 to 88-5894, 1989 WL 105937, at *3 (6th Cir. Sept. 14, 1989) (unpublished table decision) (determining that where the defendant was the car's driver and only occupant, "a reasonable juror could conclude that the defendant had knowledge, dominion and control over the firearm," even though the government offered no evidence that the defendant owned the gun or the car).

The present case is also distinguishable from *United States v. Paulk*, 917 F.2d 879 (5th Cir. 1990), upon which the government relies. In *Paulk*, the defendant was arrested some distance from his car, and an unloaded, inoperable firearm was located in the car's glove compartment. Although the Court of Appeals for the Fifth Circuit remanded the case for the district court to consider the defendant's culpability, it held that the district court did not err in finding that the defendant possessed a firearm. *Id*. at 882-84. But the defendant in *Paulk*, unlike Lucas, never disputed that the firearm belonged to him. Paulk in fact admitted that he had

drugs for which a defendant was responsible under 21 U.S.C. § 841(a)(1). *United States v. Jinadu*, 98 F.3d 239, 247-48 (6th Cir. 1996) (explaining that "the determination of the quantity of drugs involved is not an element of the offense" and that the sentencing judge, not the jury, must decide this issue).

Although Lucas's indictment did not specify a drug quantity, all parties knew that the maximum drug quantity for which Lucas might be held accountable was 595.8 grams. The penalty range for a violation of § 841(a)(1) involving 50 grams or more of crack cocaine is ten years to life imprisonment where no other sentence-enhancing factors exist. 21 U.S.C. § 841(b)(1)(A). As a result, the district court did not misstate the potential penalty that Lucas faced on the date that he entered his guilty plea in July of 1999.

Unlike cases where the district court can determine the accurate sentencing range by consulting the applicable statute, the district court in the present case could not have predicted that the Supreme Court would decide *Apprendi* as it did. *Cf. United States v. Gigot*, 147 F.3d 1193, 1198-99 (10th Cir. 1998) (holding that the district court failed to comply with Rule 11 when it did not inform the defendant of the elements of the crime to which she was pleading guilty, and misinformed her about the maximum and minimum penalties for her offenses, even though the penalties were readily ascertainable in the statute).

This court has recognized that the Supreme Court "had earlier announced the principle underlying the *Apprendi* rule in *Jones v. United States*, 526 U.S. 227 (1999)," *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000), but *Jones*'s explicit holding was based on statutory construction. *See Jones*, 526 U.S. at 251-52 (holding that the federal carjacking statute, as it existed when the defendant was indicted, established three separate offenses rather than a single offense with a choice of three maximum penalties, and recognizing that this construction avoided "serious constitutional questions on which precedent is not dispositive"). The

Court's statement that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt," *id*. at 243 n.6, was dictum in light of its resolution of the case on the basis of statutory construction.

Our conclusion that Rule 11(c) does not require a district court to predict and apply the holdings of the Supreme Court before they are announced is supported by the Court's own decision in *Brady v. United States*, 397 U.S. 742 (1970). In *Brady*, the Court rejected the petitioner's claim that his guilty plea was involuntary where, after he pled guilty to a federal kidnapping charge, the Supreme Court held that the statute's death penalty provision was unconstitutional. *Id*. at 747-48. As the Court explained,

> absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.

*Id*. at 757 (citation omitted).

Although *Brady* involved a habeas corpus petition, whereas the present case is on direct appeal, this distinction does not alter the principles set forth above. The district court correctly advised Lucas of the penalties for his offenses according to the law at the time he pled guilty, and the record

a "hybrid burden of proof." Instead, the comment reflects the court's finding that the government had satisfied its burden of proving by a preponderance of the evidence that Lucas should be held responsible for the entire 595.8 grams of crack cocaine, and that Lucas failed to present sufficient evidence to counter the government's proof.

For all of the foregoing reasons, we conclude that the district court's determination that Lucas was responsible for the entire quantity of drugs was not clearly erroneous, and that the district court did not improperly apply the burden of proof in making its finding.

## D.   Firearm enhancement

Lucas's final argument challenges the district court's decision to enhance his sentence by two sentencing levels for allegedly possessing a firearm in connection with his drug offense. According to Lucas, the government presented no evidence connecting him to the firearm found in the glove compartment of the car that he was driving when he met Horton.

Section 2D1.1(b)(1) of the United States Sentencing Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug trafficking offense. "For a court to impose a sentence enhancement under § 2D1.1(b)(1), the government must establish that (1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Bender*, 265 F.3d 464, 474 (6th Cir. 2001) (internal quotation marks and citation omitted). Constructive possession of a firearm requires actual ownership, the exercise of dominion or control over the weapon, or dominion over the premises where the firearm is located. *Id*.

The government has the initial burden of establishing by a preponderance of the evidence that the defendant possessed a firearm during the commission of a drug trafficking offense. *Id*.; *United States v. Saikaly*, 207 F.3d 363, 368 (6th Cir.

presented testimony that drug dealers often work on consignment. Lucas's reliance on this evidence to support his argument that the district court committed clear error in attributing the entire quantity of drugs to him is therefore misplaced.

Finally, Lucas overlooks several key pieces of evidence that support the district court's finding. Most importantly, Horton testified that he was acting pursuant to Lucas's instructions when he met the man who turned over the package containing the 595.8 grams of crack cocaine. The district court also noted that although Lucas claimed that he limited his dealing to one-ounce quantities of crack cocaine, the entire shipment would have constituted only about 21 one-ounce parcels, which is not an overwhelmingly large inventory. Furthermore, the presence of 600 plastic baggies with their corners cut out in Lucas's apartment, resulting in as many as 1,200 drug-carrying containers, supports a finding that Lucas was a high-volume drug dealer who had experience selling large quantities of drugs.

As an additional matter, Lucas argues that the district court improperly placed the burden of proof on him with regard to the quantity of drugs. His contention is based upon the following comment made by the district court at the sentencing hearing:

> What we do know from certainty is that this [the crack cocaine] was coming here [to Louisville] and going to Mr. Lucas and but for the traffic stop of Mr. Horton, it would have ended up here. So I am going to overrule your objection on the quantity, Mr. Bouldin [Lucas's counsel], and find that you simply have not sustained the burden of proof necessary to lower this by indicating or finding that the quantity was less than what the shipment encompassed and that the government, through its evidence, has sustained its burden to show that it's more likely than not that it was, in fact, headed to Mr. Lucas.

Although this statement is not a model of clarity, we conclude that, contrary to Lucas's belief, the district court did not apply

contains no indication that Lucas's plea was not made knowingly and voluntarily. We therefore conclude that no violation of Rule 11 occurred, and that Lucas's guilty plea was valid.

## B.  *Apprendi* issues

In addition to challenging the validity of his guilty plea based upon *Apprendi*, Lucas contends that his sentence violates *Apprendi* because his indictment did not include the quantity of drugs for which the government alleged that he was responsible. Our conclusion that the district judge did not violate Rule 11 and that Lucas's guilty plea was valid does not dispose of this issue, because *Apprendi* applies to cases on direct review involving sentences imposed before *Apprendi* was decided. *See United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000) (applying *Apprendi* where the district court sentenced the defendant before *Apprendi* was decided). We must therefore determine whether Lucas's sentence of 210 months (17.5 years) in prison and a five-year term of supervised release withstands review under *Apprendi*.

If Lucas had admitted responsibility for either the 595.8 grams of crack cocaine that the district court attributed to him, or the 54.2 grams that were in Horton's car when Lucas was arrested, the applicable statute would have required a term of imprisonment of between ten years and life. 21 U.S.C. § 841(b)(1)(A) (providing that the required sentence for a violation of § 841(a)(1) involving 50 grams or more of a mixture that contains cocaine base is "a term of imprisonment which may not be less than 10 years or more than life" where no other sentence-enhancing facts exist). As discussed above, the district court judge operated under the assumption that this statutory provision applied when he informed Lucas of the potential term of imprisonment.

Lucas, however, admitted responsibility for only one ounce, or 28 grams, of crack cocaine. To be consistent with *Apprendi*, his term of imprisonment based on that quantity of the drug would range between 5 and 40 years. 21 U.S.C. § 841(b)(1)(B) (providing that a violation of § 841(a)(1)

involving five grams or more of a mixture than contains cocaine base requires "a term of imprisonment which may not be less than 5 years and not more than 40 years" where no other sentence-enhancing facts exist); *United States v. Harper*, 246 F.3d 520, 530-31 (6th Cir. 2001) (holding that *Apprendi* is not implicated where the defendant has "stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing").

Applying these principles to the present case, Lucas's sentence is consistent with the applicable term of imprisonment corresponding to the quantity of drugs for which he acknowledged responsibility. His 17.5 year sentence does not exceed the maximum penalty set forth in § 841(b)(1)(B), nor is it at or near the statutorily prescribed minimum penalty in this subsection. We therefore conclude that Lucas's sentence does not violate *Apprendi*. *See United States v. Garcia*, 252 F.3d 838, 843 (6th Cir. 2001) (holding that the defendant's sentence did not violate *Apprendi* where the actual sentence imposed did not exceed the maximum penalty corresponding to the quantity of drugs for which the defendant acknowledged responsibility, nor was the sentence at the bottom end of a higher statutory range of penalties); *cf. United States v. Ramirez*, 242 F.3d 348, 350-52 (6th Cir. 2001) (holding that the defendant's rights under *Apprendi* were violated where the sentence was at the mandatory minimum for the judge-determined drug quantity and the judge felt constrained by the statute to impose this sentence).

## C.   Amount of drugs attributable to Lucas

Lucas next argues that the district court erred in finding that he was accountable for the 595.8 grams of crack cocaine that were originally concealed in Horton's car. According to Lucas, the evidence at the sentencing hearing established that he was responsible for only one ounce of crack cocaine. In addition, Lucas contends that the district court improperly

placed the burden of proof on him with regard to the drug quantity determination.

We review the findings of fact that a district court makes at a sentencing hearing under a clearly erroneous standard. *United States v. Hamilton*, 263 F.3d 645, 651 (6th Cir. 2001). "A district court's factual findings are clearly erroneous if, based on the entire record, we are left with the definite and firm conviction that a mistake has been committed." *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (internal quotation marks and citation omitted). Furthermore, the government must prove the quantity of drugs attributable to a particular defendant by a preponderance of the evidence. *United States v. Jinadu*, 98 F.3d 239, 249 (6th Cir. 1996).

Lucas contends that the district court's drug quantity determination was clearly erroneous because of: (1) the alleged inconsistencies in Horton's testimony, (2) the possibility that Horton fabricated his testimony to reduce his potential sentence, and (3) the presence of only $1,870 in Lucas's apartment, an amount that is clearly insufficient to purchase 595.8 grams of crack cocaine.

Although these considerations might raise doubts about the quantity of drugs that Lucas expected to receive, we conclude that the district court's finding was not clearly erroneous. Regarding Horton's testimony, the district court considered Lucas's allegations and determined that Horton was a credible witness. We find no reason to substitute our judgment for the credibility determinations of the trial judge who had the opportunity to observe Horton's testimony and assess his demeanor on the witness stand. *See Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) (refusing to second-guess the credibility determination of the magistrate judge, based upon the general reluctance of this court "to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor").

In addition, the amount of money found in Lucas's apartment has little probative value, because the government