RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOE A. LOGAN, SR.,

    *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

    *Respondent-Appellee.*

No. 04-5325

>

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
Nos. 01-00020; 96-00020—Thomas B. Russell, District Judge.

Submitted: October 27, 2005

Decided and Filed: January 19, 2006

Before: SILER, CLAY, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee. Joe A. Logan, Sr., Greenville, Illinois, pro se.

    ROGERS, J., delivered the opinion of the court, in which SILER, J., joined. CLAY, J. (pp. 7-9), delivered a separate concurring opinion.

---

**OPINION**

---

    ROGERS, Circuit Judge. Petitioner, sentenced under the federal arson statute provision for a higher maximum penalty "when death results," argues in this collateral attack upon his sentence that the jury, not the district judge, should have determined the fact that deaths resulted from the fire that he set. *Jones v. United States*, 526 U.S. 227 (1999), decided during the pendency of petitioner's direct appeal, held that a sentence under the federal carjacking statute provision for a higher maximum penalty "when death results" required a jury determination that death resulted from the carjacking. Because no basis has been articulated for distinguishing the effect of the two statutes, *Jones* requires that, in order for the court to impose a sentence under the federal arson statute provision for a higher maximum penalty "when death results," the fact of death must be determined by a jury beyond a reasonable doubt. We nonetheless affirm the denial of relief under 28 U.S.C. § 2255 because petitioner never raised the issue, either at trial or on direct review, despite the apparent opportunity to do so at both levels.

1

**I.**

Logan's employer and co-defendant Suresh Kumar sought to collect the proceeds of an insurance policy on his failing hotel in Bowling Green, Kentucky. To this end, Kumar asked Logan, his maintenance man, to set fire to the hotel in consideration for $3500 and a free place to live for one year. In 1996, Logan set fire to the hotel. The fire destroyed the building, killed four individuals, and seriously injured fifteen others. Kumar filed an insurance claim for more than $4.5 million in losses. *See United States v. Logan*, Nos. 97-5912, 97-5914, 1999 WL 551353, at *1 (6th Cir. July 19, 1999).

During pretrial proceedings for Kumar and Logan's joint trial, Kumar argued that the deaths in the hotel fire were irrelevant to the arson offense to be considered by the jury and thus that evidence of the deaths was barred by Federal Rules of Evidence 401 and 402. The district court noted the split of authority as to whether the issue of death was an element of the aggravated arson offense or a mere sentencing enhancement. The court determined that death was not an element and noted that because "the defendant argues that the death certificates are not relevant, defendant Kumar agrees with the government's position [that death was not an element of the offense]." The court therefore granted Kumar's motion to keep evidence of the deaths from the jury. Logan brought a motion to exclude a 911 telephone transcript because he argued that testimony regarding the victims did not make it any more or less probable that he set the fire. In the same order granting Kumar's motion, the district court granted Logan's motion on the grounds that the 911 evidence was not probative.

After a joint trial with co-defendant Kumar, the jury on February 28, 1997, found Logan guilty of (1) conspiracy to commit mail fraud and arson in violation of 18 U.S.C. §§ 371, 844(i), and 1341; and (2) arson of real property used in or affecting interstate commerce in violation of 18 U.S.C. § 844(i). The jury did not decide whether any death or serious bodily injury resulted from the arson. The jury acquitted Logan of mail fraud.

Logan challenged the Presentencing Report on ten grounds. Logan argues for purposes of his § 2255 motion that three of his ten objections demonstrate that he raised the issue of whether the jury or the judge had the authority to decide whether the deaths occurred. First, Logan argued that he was entitled to a downward departure because he lacked the necessary culpable mental state to kill when he set the hotel on fire. Second, he argued that the court failed to give sufficient consideration to the evaluations submitted by defense experts that indicated Logan was mentally impaired. Third, Logan argued that the government's summary of the evidence, relied upon by the trial court, did "not accurately reflect the defense level of culpability for sentencing purposes."

Pursuant to 18 U.S.C. § 844(i), the district court on July 7, 1997, sentenced Logan to life imprisonment for the arson charges because the arson caused the death of four people. On March 24, 1999, the Supreme Court decided *Jones v. United States*, 526 U.S. 227 (1999), which held that the federal carjacking statute required the jury to decide, as an element of the statutory offense, whether death occurred as a result of the relevant criminal conduct. Logan appealed his sentence to this court, which heard oral arguments on June 16, 1999. This court affirmed his sentence on July 19, 1999. Logan subsequently petitioned the Supreme Court for a writ of certiorari, but the Court denied his petition.

Logan filed a motion for collateral relief pursuant to 28 U.S.C. § 2255 on January 16, 2001. The magistrate recommended that *Jones* applied to Logan's case because *Jones* was decided before Logan's case became final. The magistrate also held that *Jones* announced a new rule of constitutional law. The magistrate nevertheless determined that, under applicable plain-error review, Logan was not entitled to relief because he had not raised the "death issue" in any manner.

Moreover, the magistrate noted that "there was no serious dispute in this case that the deaths resulted from the arson of which Mr. Logan was convicted."

The district court did not adopt the magistrate's report in full because the court held that *Jones* did not announce a new rule of constitutional law. Instead, the court held that, because *Jones* merely provided statutory interpretation limited to the federal carjacking statute and did not provide a constitutional rule of criminal procedure, Logan could not rely on *Jones* in his § 2255 motion. The district court accordingly dismissed Logan's motion.

On November 24, 2004, this court, construing Logan's appeal of the district court's ruling as an application for a certificate of appealability, permitted him to appeal whether *Jones* applied to his case and, if so, whether he procedurally defaulted his *Jones* claim. We first conclude, contrary to the district court's determination, that Logan can rely on *Jones* because *Jones*' holding regarding the elements of the federal carjacking statute is pertinent to the correct interpretation of the federal arson statute. However, we affirm the judgment of the district court to dismiss Logan's motion because, by failing to argue (at both trial and on direct appeal) the nonconstitutional, nonjurisdicitional issue that *Jones* resolved, Logan procedurally defaulted his *Jones* claim.

## II.

The nonconstitutional nature of the Supreme Court's holding in *Jones v. United States* does not preclude Logan from relying on that case in his § 2255 motion. Section 2255 extends to relief based on "laws of the United States."

*Jones* announced a new rule of statutory law, not a new rule of constitutional law. The petitioner in *Jones* successfully argued that the jury had to decide, as an element of the offense, whether anyone died in connection with his carjacking. The Court held that, because allowing the judge to determine the fact of whether anyone died as a sentencing factor would "raise serious constitutional questions," Congress presumptively intended the issue of death to be an element of the statutory offense. *Jones*, 526 U.S. at 251. To quell the dissenters' fears that the Court's decision would unsettle state-sentencing practices, the majority stated, "[O]ur decision today does not announce any new principle of constitutional law, but merely interprets a particular federal statute in light of a set of constitutional concerns that have emerged through a series of our decisions over the past quarter century." *Id.* at 252 n.11; *see also United States v. Lucas*, 282 F.3d 414, 420 (6th Cir. 2002) (stating that, because the Court in *Jones* resolved the case on statutory grounds, its constitutional discussion was merely dicta), *partially overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). Indeed, the Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), announced the rule of constitutional criminal procedure suggested in *Jones*: the jury must decide any fact that increases the penalty for a crime beyond a statutory maximum. *See Apprendi*, 530 U.S. at 476 (stating that *Jones* merely foreshadowed the holding in *Apprendi*). The district court, therefore, correctly determined that *Jones* provided only statutory interpretation, not a rule of constitutional criminal procedure.

The statutory nature of *Jones*' holding does not by itself mean that Logan could not rely upon *Jones* on collateral attack. Petitioners bringing motions under § 2255 can rely on the Court's decisions grounded in statutory law. Indeed, in *Davis v. United States*, 417 U.S. 333, 346 (1974), the Supreme Court held that "the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a § 2255 proceeding."

Moreover, *Jones* applies to a conviction under the federal arson statute even though *Jones* was decided under the federal carjacking statute. Both statutes, with similar phrasing and language, describe the substantive crime and then provide different penalties if bodily injury or death occurs during the commission of the crime. *Compare* 18 U.S.C. § 844(i), *with* 18 U.S.C. § 2119. Indeed,

the government concedes that "a *Jones* analysis of 18 U.S.C. § 844(i) would almost certainly have resulted in a conclusion that the 'if death results' finding was an element to be proved to the jury." In light of the similarity between the statutes' language and the government's concession, Logan can properly rely on *Jones* in his § 2255 motion.

## III.

Although not precluded from relying upon *Jones* because of the statutory basis for the *Jones* holding, Logan procedurally defaulted his claim by failing to raise the *Jones* issue at trial or on appeal. Logan never raised the issue despite the district court's recognition that the issue was unsettled at the time of Logan's trial and despite the fact that the Supreme Court decided *Jones* before Logan's oral argument to this court on direct appeal. Moreover, even if this court were to hold that Logan did not have the opportunity to raise the issue, Logan still cannot rely on *Jones* because the district court's error did not cause a "fundamental defect" or a "miscarriage of justice."

Statutory claims brought under § 2255 are proper only when the issues presented in the motion were raised on direct appeal or, if the issue could not be raised, when a miscarriage of justice arises. The Supreme Court held in *Sunal v. Large* that a petitioner could not raise a statutory claim for the first time on collateral attack where the resolution of the relevant legal issue "at the time of the conviction[] . . . had not crystallized." 332 U.S. 174, 181 (1947). Later in *Davis v. United States*, the Court held that "the appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" 417 U.S. at 346 (citations omitted). In *Stone v. Powell*, the Court stated that together *Sunal* and *Davis* stand for the following rule: (1) petitioners may not raise in collateral attacks statutory issues that could have been raised on appeal, and (2) any statutory claims that could not have been raised on appeal are permissible only if they satisfy the "fundamental defect" test. 428 U.S. 465, 478 n.10 (1976). The *Stone* Court also noted that, while the scope of the writ of habeas corpus has been expanded to include various constitutional claims, there has been no expansion for nonconstitutional claims. *See id.*

Contrary to Logan's assertions, Logan's objections to the Presentencing Report failed to raise the issue of whether the deaths were elements of the statutory offense. His first objection concerned whether he had the requisite mental state to be sentenced at base offense level 43. He argued that he had no intent to kill; instead, he was at most criminally negligent or reckless. His second objection was that the district court improperly excluded expert testimony of Logan's mental impairment. His third objection was that the district court should not rely on the United States' summary of the evidence because it failed to reflect his true level of culpability. These objections neither challenged the fact that deaths occurred nor addressed the issue of whether the jury or judge should decide whether deaths resulted from the hotel fire. Therefore, Logan failed at trial to raise the issue decided in *Jones*.

Logan failed to raise the *Jones* issue at trial despite his knowledge that the issue was unsettled. The issue of whether death was an element of the offense or a mere sentencing factor was unsettled at the time of his 1996-97 trial. *Compare United States v. Triplett*, 922 F.2d 1174, 1177 (5th Cir. 1991) (holding that the jury must decide as an element of the offense whether deaths occurred), *with United States v. Ryan*, 9 F.3d 660, 669 (8th Cir. 1993), *and United States v. Oliver*, 60 F.3d 547, 552 (9th Cir. 1995) (holding that whether deaths occurred was merely a sentencing factor). In fact, the United States presented a thorough discussion of the unsettled issue in its response to Kumar's motion to suppress, noted that two circuits disagreed, and correctly informed the district court that the Sixth Circuit had never decided the issue. The issue, therefore, was neither settled nor overlooked at the time of trial. Even more problematic for Logan is the fact that his co-defendant Kumar argued to exclude evidence of the deaths on grounds of irrelevance. The district

court concluded that, for Kumar to challenge the evidence on relevance grounds, Kumar necessarily conceded that the jury was not to decide whether the deaths occurred. Logan remained silent in the face of Kumar's successful challenge.

Logan also failed to raise the *Jones* issue on direct appeal once *Jones* was decided. Because the Supreme Court decided *Jones* before Logan's oral argument on direct appeal in this court (and thus before Logan's case became final), Logan certainly could have relied upon *Jones* in his appeal to this court and on certiorari to the Supreme Court. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Although *Jones* was decided on March 24, 1999, over two months before this court heard oral arguments, Logan did not file a motion to cite additional authorities under Fed. R. App. P. 28(j) or address the issue in his oral argument. Because Logan failed to raise the *Jones* issue at trial or on direct appeal, Logan procedurally defaulted his *Jones* claim.

## IV.

Even if this court determined that Logan could not have reasonably contested the issue at trial or on appeal, he still cannot rely on *Jones* because the district court's incorrect interpretation of the statute at trial did not result in a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346. The proper "fundamental defect" inquiry asks whether the "defendant stands convicted of 'an act that the law does not make criminal.'" *Bousley v. United States*, 523 U.S. 614, 620 (1998) (quoting *Davis*, 417 U.S. at 346). Logan cannot satisfy this "fundamental defect" inquiry.

Logan's claim does not present a "fundamental defect" because he is not convicted of an act that the law does not make criminal. Logan was found guilty of arson. The judge also found that Logan's arson resulted in the death of others. *Jones*' holding, concerning who must find a fact (not what fact must be found), in no way renders Logan's conduct legal. The substance of the law did not change; only the procedure changed. *See Schriro v. Summerlin*, 542 U.S. 348, 354 (2004) (holding that a constitutional ruling requiring the jury, instead of the judge, to decide aggravating factors in death-penalty cases was a procedural, as opposed to a substantive, change). Because *Jones* does not render Logan's conduct legal, Logan does not stand convicted of a noncriminal act and cannot satisfy the "fundamental defect" test.

Even assuming there was a "fundamental defect," no miscarriage of justice or other extraordinary factor in this case allows Logan to rely in his motion on the change in statutory interpretation. In Logan's case, no party questioned, according to the magistrate, that deaths resulted from the fire. *See Derman v. United States*, 298 F.3d 34, 46 (1st Cir. 2002) (denying petitioner's § 2255 motion based on a constitutional claim after determining that no reasonable juror could have found in petitioner's favor regarding an issue that the judge should not have decided). Moreover, that Logan remained silent after the court addressed the exact issue decided in *Jones* counsels against finding any miscarriage of justice. Indeed, his successful motion to exclude the 911 telephone transcript was implicitly premised on the fact that the jury had no need to consider evidence regarding the victims' serious injury or death. Logan has not argued that the judge's finding prejudiced him in any way. Instead, in light of his motion to suppress, Logan apparently believed that it favored him for the judge, rather than the jury, to decide whether the deaths occurred.[1] Logan, therefore, cannot rely on *Jones* because no miscarriage of justice or other extraordinary factor exists in this case.

---

[1]Logan also appears unable to state a successful claim for ineffective assistance of counsel. Counsel pursued a trial tactic of keeping all evidence of the deaths from the jury. The Court in *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984), held that strategic decisions are "virtually unchallengeable." Counsel's decision appears reasonable considering that the fact of the deaths was uncontested.

**V.**

For the foregoing reasons, we AFFIRM the district court's denial of Logan's § 2255 motion.

---

**CONCURRENCE**

---

CLAY, Circuit Judge, concurring. I concur in the decision to affirm the district court's denial of habeas relief to Petitioner, but I write separately because my rationale differs from that of the majority. In my view, Petitioner may not rely on *Jones* to support his petition for habeas relief. The decision in *Jones* did not announce a new rule of criminal procedure with general application; but rather, the decision was one only of statutory construction of the federal carjacking statute.

When a federal prisoner makes a § 2255 habeas claim, he alleges that his sentence was illegal, in that it violated the United States Constitution or federal law. *See* 28 U.S.C. § 2255. The question is then what exactly *Jones* made illegal. The answer to this question is straightforward; *Jones* made it illegal for a court to convict and sentence an individual for federal carjacking when serious bodily injury resulted, or for federal carjacking when death resulted, if the issue of whether serious bodily injury resulted, or whether death resulted, was not charged in the indictment and found by the jury to have been proved beyond a reasonable doubt. *See Jones v. United States*, 526 U.S. 227, 251-52 (1999). *Jones* did not make it illegal for a court to convict and sentence an individual for federal arson when death resulted when the issue of whether death resulted was determined by the judge by a preponderance of the evidence; only in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), would the Supreme Court later make such a sentence illegal by announcing the constitutional rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The majority, by finding that *Jones* made Petitioner's sentence illegal, bestows a constitutional importance to *Jones* that the Supreme Court reserved for *Apprendi*.

As the majority recognizes, the Supreme Court's holding in *Jones* referred only to the federal carjacking statute. The issue addressed by the Court in *Jones* was "whether the federal carjacking statute, 18 U.S.C. § 2119, . . . defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." *Jones v. United States*, 526 U.S. 227, 229 (1999). The Court held that "[a]ny doubt on the issue of *statutory construction* is hence to be resolved in favor of avoiding [constitutional] questions. This is done by *construing § 2119* as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 251-52 (emphasis supplied).

In fact, the Supreme Court explicitly stated that the holding was one only of the statutory construction of § 2119. The dissent reasoned that the majority's underlying principle would "cast[ ] doubt on sentencing practices and assumptions followed not only in the federal system but also in many States." *Jones*, 526 U.S. at 254 (Kennedy, J., dissenting). Because many federal and state criminal statutes used both elements and sentencing considerations, the dissent's view was that the constitutionality of these statutes would be called into question by the *Jones* decision, as federal and state courts would be left with the daunting task of separating what was truly an element of a crime from mere sentencing factors for each of these statutes.

The Supreme Court responded to this concern by stating "our decision today *does not announce any new principle of constitutional law*, but merely interprets a *particular* federal statute in light of a set of constitutional concerns that have emerged through a series of our decisions over the past quarter century." *Id.* at 252 n.11 (emphasis supplied). In response to the dissent's fear that

*Jones* would extend to other federal and state criminal statutes, the Court unequivocally cabined its constitutional analysis to the federal carjacking statute.

This Court has specifically held that *Jones* is inapplicable to cases that involve statutes other than the federal carjacking statute. In *United States v. Lucas*, this Court recognized that:

> *Jones's* explicit holding was based on *statutory construction. . . .* The [Supreme] Court's statement that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt," . . . was dictum in light of its resolution of the case on the basis of *statutory construction.*

282 F.3d 414, 420 (6th Cir. 2002), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002) (internal citations omitted) (emphasis supplied). In that case, this Court refused to extend the holding of *Jones* to 21 U.S.C. § 841, a federal narcotics statute. *Id.* This Court found that the defendant could not rely on *Jones* to attack the legality of his federal narcotics sentence, as *Jones* dealt only with the federal carjacking statute. *Id.* In short, the *Lucas* decision is a clear example where this Court has refused to extend *Jones* to other statutes.

Despite the unambiguous language of both the Supreme Court and this Court, the majority endeavors to contort the holding of *Jones* to apply to the federal arson statute, so that Petitioner may rely on *Jones* in his habeas petition. While seemingly accepting the limiting language in *Jones* and this Court's interpretation of that language in *Lucas*, the majority finds that

> [t]he statutory nature of *Jones'* holding does not by itself mean that Logan could not rely upon *Jones* on collateral attack. Petitioners bringing motions under § 2255 can rely on the Court's decisions grounded in statutory law. Indeed, in *Davis v. United States*, . . . the Supreme Court held that "the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a § 2255 proceeding."

It is certainly true that in a § 2255 habeas petition, a petitioner can attack his sentence based on either constitutional or federal statutory grounds. Section 2255 of Title 28 of the United States Code states, "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." The question is then what statute Petitioner points to that would warrant habeas relief. Certainly the majority does not suggest that Petitioner may rely on the federal carjacking statute itself for the proposition that whether death results under the federal arson statute is a jury issue. Nothing in the text of the statute would support such an argument. *See* 18 U.S.C. § 2119.

Perhaps the majority's argument is that Petitioner can rely on the statutory construction of the federal carjacking statute in *Jones* to make an argument as to why the federal arson statute should have been construed in the same manner in his case; if this is the point, however, Petitioner is not relying on federal statutory law at all. He is relying on the Supreme Court's interpretation of the federal carjacking statute based on constitutional grounds to show that the federal arson statute should be construed based on those same constitutional grounds. Petitioner challenges his sentence as unconstitutional, not in violation of federal statutory law, because "when death occurs" was a fact found by the judge and not the jury.

The question then becomes whether *Jones* in fact converted Petitioner's federal arson sentence from constitutional to unconstitutional in nature. The language in *Jones* previously cited

demonstrates beyond argument that the answer is no. I agree with the majority that the relevant language in § 844(i) and § 2119 is similar; however, *Jones* did not *require* courts that made decisions between the filing dates of *Jones* and *Apprendi* to apply the *Jones* analysis to statutes similar to § 2119, especially since the Supreme Court went to great lengths to explain that the analysis in *Jones* applied only to § 2119. If the Supreme Court intended the *Jones* analysis to apply to statutes similar to § 2119, it would have said as much.

This is not to say that courts after *Jones* but before *Apprendi* could not have used *Jones* as persuasive authority when engaging in their own construction of statutes similar to the federal carjacking statute. The point, however, is that *Jones* was not controlling in those instances; *Jones* controlled only in cases that involved the federal carjacking statute. A court's decision to ignore *Jones* in another statutory context would not have been unconstitutional, in violation of federal law, or otherwise illegal; this Court's *Lucas* decision exemplifies this point. Simply put, a pre-*Apprendi* court may have been able to use *Jones* in construing another statute, but it was not required to do so. As a result, Petitioner fails to show how his sentence was illegal, and he is therefore not entitled to § 2255 habeas relief.