RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BRETT LANG,

>*Petitioner-Appellant,*

*v.*

No. 05-2700

UNITED STATES OF AMERICA,

>*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-71898—Patrick J. Duggan, District Judge.

Argued: December 7, 2006

Decided and Filed: January 24, 2007

Before: CLAY, ROGERS, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Patricia A. Maceroni, Mt. Clemens, Michigan, for Appellant. Wayne F. Pratt, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Patricia A. Maceroni, Mt. Clemens, Michigan, for Appellant. Wayne F. Pratt, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Petitioner Brett Lang appeals the district court's denial of his motion to vacate his resentencing pursuant to 28 U.S.C. § 2255. Petitioner contends that because he argued that the principle announced in *Booker* applied to his resentencing, he is entitled to have *Booker* apply retroactively despite the fact that *Booker* was decided after his resentencing became final. We disagree and **AFFIRM** the decision of the district court.

### I.

Petitioner was the second most culpable member of a major drug conspiracy, which distributed cocaine and heroin for approximately four years in 1988 through 1991. The government, using wiretaps, raids, and undercover buys disrupted the conspiracy, which led to the indictment of sixteen individuals.

Petitioner was indicted on November 12, 1991. The indictment, as modified by the superseding indictment of February 13, 1992, charged Petitioner with eight counts involving drugs, firearms, and the unlawful use of a telephone facility. Specifically, Petitioner was charged with one count of conspiracy to possess with the intent to distribute heroin and cocaine under 21 U.S.C. § 846; one count of aiding and abetting the distribution of heroin under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; two counts of possession with the intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1); two counts of using a firearm during a drug trafficking offense under 18 U.S.C. § 924(c); and two counts of unlawful use of a telephone under 21 U.S.C. § 843(b). Petitioner pled not guilty, and after a jury trial, was convicted on July 2, 1992 of five of the charges against him. This included conspiracy to possess with the intent to distribute cocaine and heroin, two counts of possession with intent to distribute a controlled substance, and two counts of using a firearm during a drug trafficking offense. Petitioner was sentenced on November 25, 1992 to a total of 384 months imprisonment: 324 months as to the conspiracy count, 240 months as to each possession count to run concurrently with each other and the conspiracy count, and 60 months as to the firearms count, to run consecutively to the other counts.[1] Petitioner appealed, and the Sixth Circuit affirmed in an unpublished opinion on November 8, 1994. *United States v. Lang*, No. 92-2487, 1994 WL 629393 (6th Cir. Nov. 8, 1994) (unpublished).

On August 22, 1995, Petitioner filed a motion to vacate pursuant to 28 U.S.C. § 2255. On March 19, 1996, the district court denied that motion. This Court affirmed that denial on March 18, 1997. *Lang v. United States*, No. 96-1507, 1997 WL 123760 (6th Cir. Mar. 18, 1997) (unpublished).

Petitioner subsequently filed a second motion to vacate under § 2255, which the district court transferred to the court of appeals pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220. This Court dismissed Petitioner's second motion to vacate without prejudice for want of prosecution on December 17, 1996. By order of April 30, 1999, this Court granted Petitioner permission to file a successive § 2255 motion limited to the question of whether Petitioner's firearm conviction was still valid under *Bailey v. United States*, 516 U.S. 137, 150 (1995) (holding that "use" in a statute prohibiting the use of a firearm during a drug offense means that a defendant "actively employed" such firearm).

On May 24, 2000, the district court vacated Petitioner's conviction for the firearm offense, and ordered that Petitioner be resentenced. Petitioner was resentenced on June 13, 2001. Prior to resentencing, *Apprendi v. New Jersey*, 530 U.S. 466 (2000) was decided, and the district court proceeded at sentencing under the assumption that *Apprendi* applied. The district court sentenced Petitioner to a total of 320 months: 240 months on the conspiracy count, and 80 months on each of the possession counts, to run concurrently to each other but consecutively to the conspiracy count. Petitioner appealed his conviction, which was affirmed by this Court in *United States v. Wingo*, 76 F. App'x 30, 2003 WL 22114017 (6th Cir. Sept. 9, 2003) (unpublished). As relevant here, Petitioner challenged the imposition of consecutive sentences, arguing that the drug quantities that triggered the mandatory "stacking" provisions of the sentencing Guidelines were based on facts that were not alleged in the indictment and submitted to a jury.[2] *Id.* at 35. This Court, although labeling Petitioner's challenge "clever," concluded that he could show no *Apprendi* error because the district court's sentence was within the statutory maximum for that count. *Id.* The court thus affirmed Petitioner's sentence. *Id.* at 41. Petitioner appealed to the Supreme Court, which denied certiorari.

---

[1]The government voluntarily dismissed the aiding and abetting charge prior to trial; the unlawful use of a telephone charges and one count of the firearms charge were dismissed by the court on Petitioner's motion for judgment of acquittal.

[2]"Stacking" provisions refers to those provisions of the Guidelines mandating that Petitioner's sentences for possession run consecutively with, rather than concurrently to, the conspiracy sentence. *See* U.S. Sentencing Guidelines Manual § 5G1.2(d) (hereinafter "U.S.S.G.").

*See Lang v. United States*, 541 U.S. 967 (2004).  Petitioner petitioned for rehearing of that denial, which was denied on May 17, 2004.  *See Lang v. United States*, 541 U.S. 1058 (2004).  On June 24, 2004, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), and subsequently decided *United States v. Booker*, 543 U.S. 220 (2005).

In light of this new precedent, Petitioner moved again for relief under § 2255, arguing, *inter alia*, that his sentence of June 13, 2001 was unconstitutional because of the holdings of *Blakely* and *Booker*.   The government moved to transfer this case to the court of appeals, arguing that Petitioner's motion was a successive petition pursuant to § 2255 and therefore must be certified by a panel of the court of appeals.  The district court denied the motion to transfer, concluding that it was Petitioner's first motion to vacate his June 13, 2001 sentence.  On September 20, 2005, the district court denied Petitioner's motion on its merits, holding that *Booker* was not retroactive and thus did not apply to Petitioner, because his resentencing became final before *Blakely* was decided. Petitioner moved for rehearing, which was denied on November 7, 2005.  Petitioner filed a timely notice of appeal on December 5, 2005.

## II.

The government argues that Petitioner's motion to vacate should be dismissed as a second or successive motion that was improperly filed in the district court.  Whether or not Petitioner's motion is "second and successive" within the meaning of § 2255 is, like all questions of statutory interpretation, an issue that we review *de novo*.  *See United States v. Morris*, 203 F.3d 423, 424 (6th Cir. 2000) (citing *United States v. Hans*, 921 F.2d 81, 82 (6th Cir. 1990)).

Section 2255 provides that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals."  Section 2244(b)(3) provides a procedure for filing a second or successive motion, which requires, *inter alia*, that the motion originate in the court of appeals and be authorized by a three-judge panel.  Moreover, in order for the court of appeals to approve the filing of a second or successive motion, the petitioner must allege certain substantive facts, which Petitioner here undisputedly cannot show. § 2244(b)(2).  If we were to construe Petitioner's motion as a "second or successive" motion within the meaning of § 2255, Petitioner's motion would not have been properly filed, and should be dismissed on that basis.

Courts have not, however, construed "second or successive" to encompass all § 2255 motions or habeas petitions that are "numerically" second in the sense that they are literally the second motion filed.[3]  *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006); *see also Slack v. McDaniel*, 529 U.S. 473, 487-88 (2000) (holding that second habeas petition raising claims dismissed in previous "mixed" petition was not second or successive); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998) (holding that habeas petition raising claim previously dismissed as premature was not second or successive).  In *Bowen*, this Court held that a state habeas petitioner did not present a "second or successive" petition where he filed a second petition raising an ineffective assistance of counsel claim that he was barred from raising in his original petition for habeas corpus. 436 F.3d at 705.  The *Bowen* court reasoned that "courts defining 'second or successive' generally apply abuse of the writ decisions, including those decisions that predated AEDPA." *Id.* at 704.  The court continued:  "Under the abuse of the writ doctrine, a numerically second petition is 'second' when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect." *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467,

---

[3]"Title 28 U.S.C. § 2255 is essentially equivalent to § 2254, the former being a postconviction remedy for federal prisoners and the latter available to 'a person in custody pursuant to the judgment of a State court.'" *Stevenson v. Summers*, 258 F.3d 520, 523 n.4 (6th Cir. 2001) (quoting 28 U.S.C. § 2254).  Thus, although we recognize that § 2254 and § 2255 are distinct for some purposes not implicated here, we consider cases construing the term "second or successive" in § 2254 highly relevant to the present inquiry.

489 (1991)).  Implicitly affirming this practice, the court applied that standard to Bowen's claim. *Id.* at 706.

Other courts of appeals have applied similar principles and held that § 2255 motions or petitions for habeas corpus were not "second or successive" when the second action challenges a judgment or portion of a judgment that arose as a result of a previous successful action.  *See Hepburn v. Moore*, 215 F.3d 1208, 1209 (11th Cir. 2000)  (per curiam) ("Every circuit that has addressed the issue has agreed that, under the AEDPA, when new claims originate at resentencing, those claims may be brought in a subsequent habeas petition without the necessity of obtaining permission from the circuit court before filing the petition."); *In re Taylor*, 171 F.3d 185, 187-88 (4th Cir. 1999) (section 2255 motion was not "second or successive" when it raised claims that originated at resentencing); *Esposito v. United States*, 135 F.3d 111, 113 (2d Cir. 1997) (per curiam) (section 2255 motion challenging resentencing was only second or successive "to the extent that it challenge[d] the underlying conviction or seeks to vacate any component of the original sentence that was not amended" (quoting *Galtieri v. United States*, 128 F.3d 33, 38 (2d Cir. 1997))); *Walker v. Roth*, 133 F.3d 454, 455 (7th Cir. 1997) (per curiam) ("We hold that a second habeas petition attacking for the first time the constitutionality of a newly imposed sentence is not a second or successive petition."); *United States v. Scott*, 124 F.3d 1328, 1330 (10th Cir. 1997) (per curiam) (allowing § 2255 motion to challenge ineffective assistance of counsel at resentencing); *see also Dahler v. United States*, 259 F.3d 763, 765 (7th Cir. 2001); *United States v. Barrett*, 178 F.3d 34, 43-44 (1st Cir. 1999) (noting that "decisions have created an exception . . . where the second petition challenges parts of the judgment that arose as the result of the success of an earlier petition" and noting that that exception did not apply); *Luckett v. McDaniel*, No. 99-15044, 2000 WL 340124, at *1 (9th Cir. Mar. 28, 2000) (unpublished) (same).  By contrast, no circuit that has addressed the issue has held that a § 2255 motion or a habeas petition that addresses an issue that originates at resentencing is a second or successive petition.

In the instant case, Petitioner is contesting issues that originated at his resentencing. Petitioner's challenge concerns the district court's reliance upon drug quantities at resentencing to apply the "stacking" provisions of U.S.S.G. § 5G1.2(d).[4]  Section 5G1.2(d) provides that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."  At resentencing, Petitioner was sentenced for three convictions:  one conviction for conspiracy, and two convictions for possession.  With respect to the conspiracy count, the district court "appl[ied] an *Apprendi* type approach to [the conspiracy count] and determin[ed] that the maximum sentence on [the conspiracy count was] 20 years."  J.A. at 334-35.  However, because the district court determined that the drug quantity findings from Petitioner's prior sentencing remained appropriate, the district court determined that the Guidelines range was above the statutory maximum.  It thus considered itself bound by the Guidelines to apply the § 5G1.2(d) "stacking" provisions and run the sentences for the possession convictions consecutively to the sentence for the conspiracy conviction. This challenge to the Guidelines "stacking" provisions "originates" from Petitioner's resentencing;[5]

---

[4]The district court granted a certificate of appealability as to two issues: "(1) [whether] the utilization of the drug quantities, determined by a mere preponderance, violated *Apprendi*; and (2) [whether] the stacking provision of the sentencing guidelines, U.S.S.G. § 5G1.2(d), violated *Apprendi* because it resulted in a sentence that was beyond the statutory maximum, based on factors not determined by the jury or admitted to by Petitioner." J.A. at 229. We do not, however, consider these issues to be distinct. Petitioner's brief only objects to one instance where the district court utilized drug quantities found by a preponderance of the evidence, namely, the district court's application of the "stacking" provisions. Accordingly, this is the only issue properly before us.

[5]This conclusion is also implicit in the fact that the prior panel considered Petitioner's challenge to the "stacking" provisions on its merits during Petitioner's direct appeal. *See Wingo*, 76 F. App'x at 35.

at his original sentencing hearing, Petitioner was sentenced to 324 months on the conspiracy count, and the Guidelines "stacking" provisions played no role in the sentence.[6] Because this is Petitioner's first motion challenging his second sentence, we can properly consider the motion on its merits, as did the district court.[7] We agree with our sister circuits that, where a claim originates at resentencing and could not have been challenged at the original sentencing proceeding, the first § 2255 motion challenging that claim is not a "second or successive" motion within the meaning of § 2255, regardless of whether another § 2255 motion has been previously filed.

### III.

Despite the fact that Petitioner's appeal from his resentencing became final before the Supreme Court decided *Blakely*, let alone *Booker*, Petitioner argues that his sentence should be vacated so he can be resentenced under those precedents. Petitioner does not dispute that this Court has held that *Booker* does not apply retroactively to § 2255 motions. *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir.), *cert. denied*, 126 S. Ct. 199 (2005). Moreover, *Humphress* makes clear that *Booker* announced a rule of criminal procedure, not a substantive rule. *Id.* at 860 n.1 ("Without question, this . . . is a procedural [rule]." (citing *Schriro v. Summerlin*, 542 U.S. 348, 354 (2004))). Petitioner nevertheless argues that *Booker* applies retroactively to his case because of the Supreme Court's holding in *Davis v. United States*, 417 U.S. 333, 342 (1974).

In *Davis*, the Court faced the issue of "the propriety of the Court of Appeals' judgment that a change in the law of that Circuit after the petitioner's conviction may not be successfully asserted by him in a § 2255 proceeding." *Id.* at 341. Davis was convicted for failing to report for induction into the armed forces after being drafted. *Id.* at 336. Davis had failed to keep the board apprised of his current mailing address. *Id.* at 335. As a result, the draft board's communications attempting to arrange a pre-induction physical were returned to it. *Id.* at 336. After two failed attempts the draft board labeled Davis delinquent, which potentially accelerated the time for his induction. *Id.* During Davis's direct appeal, the Supreme Court decided *Gutknecht v. United States*, 396 U.S. 295 (1970), which "held that the Selective Service regulations that accelerated the induction of delinquent registrants by shifting them to first priority in the order of call were punitive in nature and, as such, were without legislative sanction;" thus a registrant could not be prosecuted for failing to comply with an induction order issued pursuant to those regulations. *Davis*, 417 U.S. at 338. Davis was declared a delinquent under the same regulation as Gutknecht, but was prosecuted under a similar but separate regulation. *Id.* at 335-38. The court of appeals remanded Davis's case to the district court for consideration in light of *Gutknecht*. *Id.* at 338. The district court held that Davis's induction was not accelerated by his delinquency status, and therefore *Gutknecht* was inapplicable. *Id.* at 339. It affirmed Davis's conviction, as did the court of appeals. *Id.* at 338-39. While Davis's case was pending for certiorari, the court of appeals decided *United States v. Fox*, 454 F.2d 593 (9th Cir. 1971), a case that was indistinguishable from Davis's case. *Davis*, 417 U.S. at 339. The Supreme Court denied certiorari of Davis's direct appeal, and the court of appeals denied rehearing. *Id.* at 341. Davis then sought relief pursuant to § 2255. *Id.* On collateral review, the Ninth Circuit held that its earlier affirmance was the law of the case and precluded Davis from relief. *Id.* at 342. The Supreme Court reversed. The Court first noted that the Ninth Circuit's decision was inconsistent with the Court's opinion in *Sanders v. United States*, 373 U.S. 1, 17 (1963), where the

---

[6] At Petitioner's original sentencing, his firearm conviction ran consecutively to his drug convictions pursuant to 18 U.S.C. § 924(c).

[7] We note that, as Petitioner's original sentence did not involve an application of the Guidelines "stacking" provisions, there was no way for Petitioner to raise this argument at his original sentencing hearing. We express no opinion as to whether the same result would follow if Petitioner had instead made an argument that could have been raised at his original sentencing hearing, such as a claim that the district court erred by failing to exercise its discretion to sentence Petitioner below his applicable Guidelines range.

Court held that "even though the legal issue raised in a § 2255 motion 'was determined against (the applicant) on the merits on a prior application,' 'the applicant may (nevertheless) be entitled to a new hearing upon showing an intervening change in the law.'" *Davis*, 417 U.S. at 342 (quoting *Sanders*, 373 U.S. at 17). The Court then held that "[t]he same rule applies when the prior determination was made on direct appeal from the applicant's conviction, instead of in an earlier § 2255 proceeding, 'if new law has been made . . . since the trial and appeal.'" *Id.* (alterations in original) (quoting *Kaufman v. United States*, 394 U.S. 217, 230 (1969)). The Court concluded that the "Court of Appeals erred in holding that 'the law of the case,' as determined in the earlier appeal from the petitioner's conviction, precluded him from securing relief under § 2255 on the basis of an intervening change in law." *Id.*

Petitioner interprets this holding to mean that, where a petitioner argues a claim on direct appeal, and his claim is denied, and an "intervening change in law" vindicates the petitioner's position, that petitioner can obtain relief on that claim under § 2255. We disagree. In our view, subsequent decisions from this Court and the Supreme Court suggest that the exception in *Davis* only applies to *substantive* conduct.

In *Teague v. Lane*, 489 U.S. 288, 311-13 (1989), the plurality held that, with two exceptions, new rules should not be available on habeas corpus. The first exception is for "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe;" *id.* at 311 (internal quotation marks omitted), that is, *Teague* may not apply when the new rule concerns substantive conduct. The second exception is for procedural rules that "implicate the fundamental fairness of the trial." *Id.* at 312.[8] *Teague*, which post-dates *Davis*, suggests that substantive rules and procedural rules receive different treatment on collateral review.

*Davis* can be read consistently with *Teague* by limiting the exception in *Davis* to substantive conduct. The Supreme Court's opinion in *Bousley v. United States*, 523 U.S. 614 (1998), provides support for this reading. There, the Court considered whether the Court's decision in *Bailey v. United States*[9] allowed a petitioner to vacate a guilty plea pursuant to a § 2255 motion. The Court refused to apply *Teague* to the petitioner's claim. *Id.* at 620. Although the Court noted that no new constitutional rules were made by *Bailey*, which merely interpreted statutory law (18 U.S.C. § 924(c)(1)), the Court went on to opine that *Teague* was inapplicable because it only applied to procedural rules. The Court continued:

> This distinction between substance and procedure is an important one in the habeas context. The *Teague* doctrine is founded on the notion that one of the "principal functions of habeas corpus [is] 'to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.'" 489 U.S. at 312 (quoting *Desist v. United States*, 394 U.S. 244, 262 (1969)). Consequently, unless a new rule of criminal procedure is of such a nature that "without [it] the likelihood of an accurate conviction is seriously diminished," 489 U.S. at 313, there is no reason to apply the rule retroactively on habeas review. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct "'beyond the power of the criminal law-making authority to proscribe,'" *id.* at 311, (quoting [*Mackey v. United States*, 401 U.S. 667, 692 (1971)]), necessarily carry a

---

[8]The *Teague* analysis, which construed the rules for retroactivity on habeas under § 2254, has subsequently been applied to analyze claims of retroactivity under § 2255, most notably, for purposes of this case, by the Sixth Circuit in its conclusion that *Booker* was not retroactive on § 2255 motions. *Humphress*, 398 F.3d at 860-63.

[9]*Bailey v. United States*, 516 U.S. 137, 150 (1995).

significant risk that a defendant stands convicted of "an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974).

*Id.* at 620 (first and second alterations in original).

Decisions of this Court also suggest that *Davis* only allows a petitioner moving under § 2255 to re-litigate substantive changes in the law. In *In re Green*, 144 F.3d 384, 385 (6th Cir. 1998) (per curiam), the petitioner, Green, had been convicted of cocaine possession, conspiracy to distribute cocaine, and of being a felon in possession of a firearm. Filing his third § 2255 petition, Green argued his conviction should be vacated due to a change in the law of evidence, namely, *Old Chief v. United States*.[10] *Id.* Although the court separately concluded that Green's petition was defaulted, it also rejected Green's contention that *Davis* applied:

> For [the purposes of determining the retroactivity of *Old Chief*], the retroactivity analysis utilized in *Davis* is not applicable to this case. In *Davis*, the Supreme Court ruled that where an intervening change in the law is such that a defendant appears to be incarcerated for conduct which the law no longer considers criminal, the new rule of law must be applied retroactively in post-conviction proceedings. Green relies on a Supreme Court decision announcing a new rule of criminal procedure that addressed the admissibility of evidence pursuant to [Rule 403]. Green does not allege, and the record does not reflect, that he is incarcerated for conduct that is no longer considered criminal.

*Id.* at 386 (citations omitted); *see also Callanan v. United States*, 881 F.2d 229, 231 (6th Cir. 1989) (differentiating the retroactivity analysis in *Allen v. Hardy*, 478 U.S. 255 (1986) as a case that "involved . . . a new constitutional rule of criminal procedure" as opposed to the case at bar that resembled *Davis* because it involved "a new interpretation of the substantive criminal law"); *accord United States v. Woods*, 986 F.2d 669, 677 (3d Cir. 1993) (referring to *Davis* and *Teague* as "substantive or procedural" doctrinal catagories).

Petitioner relies on *Pandelli v. United States*, 635 F.2d 533, 534 n.1 (6th Cir. 1980). There, in a footnote, the Sixth Circuit construed the holding of *Davis* to be "that an issue decided against a prisoner on direct appeal could be relitigated under § 2255." *Id.* In *Pandelli*, however, the issue concerned substantive conduct: Whether "principles of double jeopardy analysis developed after Petitioner's direct appeal of his convictions in 1976 . . . afford him the right to collateral relief under 28 U.S.C. § 2255." *Id.* at 534; *see Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (stating that substantive rules apply retroactively because "they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal, *or faces a punishment that the law cannot impose upon him*" (emphasis added) (internal quotation marks omitted)). *Pandelli* thus does not provide Petitioner with any appreciable support.

Likewise, contrary to Petitioner's contention, *Logan v. United States*, 434 F.3d 503 (6th Cir.), *cert. denied*, 127 S. Ct. 581 (2006) does not support Petitioner's interpretation of *Davis*. Logan argued that he was entitled to relief under § 2255 based on the Supreme Court's holding in *Jones v. United States*, 526 U.S. 227, 239 (1999) (holding that the fact that serious bodily harm occurred was an element of Jones's federal carjacking prosecution). In *Logan*, the evidence, according to Logan, failed to show that he had the requisite mental state to kill when he burned down a hotel, killing four people. *See Logan*, 434 F.3d at 506. Petitioner contends that the fact that the *Logan* court first noted that Logan's *Jones* claim was not raised on direct appeal supports

---

[10]*Old Chief v. United States*, 519 U.S. 172, 191-92 (1997) (holding that the district court abused its discretion under Fed. R. Evid. 403 by admitting evidence of a prior felony for assault at defendant's trial for assault and being a felon in possession of a firearm where defendant was willing to stipulate to the prior felony).

Petitioner's contention that the relevant inquiry under *Davis* is whether a petitioner argued the issue on direct appeal. *See id.* at 505. *Logan*, however, supports our view of *Davis*: The *Logan* court went on to state that, even if Logan's procedural default were excused, Logan could not show a "fundamental defect" under *Davis. Id.* at 509. At best, the *Logan* court noted, *Jones* changed the *procedural* law governing Logan's conviction. *Id.* at 510 ("Because *Jones* does not render Logan's conduct legal, Logan does not stand convicted of a noncriminal act and cannot satisfy the 'fundamental defect' test.").

This Court has *never* relied on *Davis* to hold that a petitioner with a procedural claim, who raised that claim on direct appeal, and had the claim determined against him, was entitled to relief on a § 2255 motion after his direct appeal had become final because a change in the law vindicated the petitioner's procedural claim. Nor would such a holding be justified by logic or policy. There is no compelling reason for treating a petitioner who litigates and loses a procedural claim differently from a petitioner who simply does not litigate the procedural claim at all. In either case, society has the same interest in the finality of the proceedings. And in both cases–but unlike the case of a substantive change in the law–the petitioner is incarcerated for engaging in conduct which society has deemed deserving of punishment. The only distinction between these two cases is that the petitioner who raises his claim and loses is more prescient with respect to the development of the law. This is not a quality that should be dignified by affording otherwise equivalent cases different outcomes. Most fundamentally, there is nothing about this legal foresight that affects the justice or injustice of a petitioner's incarceration. More practically, affording different outcomes to these situations would encourage frivolous claims on direct appeal in the hope that subsequent vindication could provide a basis of relief after a change in the law occurs. This is not a wise distinction for the law to draw.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.